**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT
8                    FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10   JERRY VAUGHN, et al.                        No.  C 03-5725 MJJ
11              Plaintiffs,
                                                 **ORDER GRANTING DEFENDANTS'**
12      v.                                       **MOTION TO DISMISS**
13
14   BAY ENVIRONMENTAL MANAGEMENT
     INC., et al.,
15              Defendants.
16   _____/
17
18                           **INTRODUCTION**
19          Before the Court is Bay Environmental Management Inc. ("Bay Environmental"), Pina
20   Barbieri, Caesar Nuti, Dennis Varni, FSC Securities Corporation, and Jerrold Weinberg's
21   (collectively, "Defendants") motion to dismiss this action for lack of subject matter jurisdiction.  For
22   the reasons set forth below, Defendants' motion is **GRANTED**.
23                        **FACTUAL BACKGROUND**
24          Jerry Vaughn and Theresa Travers (collectively, "Plaintiffs") are both former employees of
25   Bay Environmental.[1]  Bay Environmental had a fully funded company employee pension plan and a
26   retirement savings plan (collectively, "the Plans") which had an additional profit-sharing component
27   that was fully funded by the company.  Plaintiffs allege that they were, at all relevant times,
28
     _____
            [1]Bay Environmental was acquired by Richmond Scavenger in 2002, before this lawsuit
     commenced.

"participants" in the Plans within the meaning of ERISA.  On or about April 13, 2001, Bay Environmental notified its employees that the Plans were going to be terminated as of April 30, 2001.

In August 2001, the Plans' investments were liquidated into cash.  There is no dispute that Plaintiffs received a distribution of plan assets during 2002.  However, the gravamen of Plaintiffs' First Amended Complaint is that the quantity of funds distributed was significantly diminished due to Defendants' mismanagement of the Plans' assets.  For example, Plaintiffs allege that Defendants "failed to adjust the Plans' investments to reflect the likelihood that the Plans would terminate shortly."  (First Amended Complaint ("Compl.") at ¶ 37.)  More specifically, Plaintiffs allege "that the Plans lost a significant amount of assets due to the delay in transferring the Plans' non-participant directed assets to appropriate investments once Defendants . . . knew or should have known that the Plans would terminate."  (Compl. at ¶ 39.)  Plaintiffs also allege "that the Plans lost assets due to imprudent investments by Defendants . . . and/or due to a failure by Defendants to diversify the Plans' investments."  (Compl. at ¶ 43.)

## LEGAL STANDARD

A federal court must have jurisdiction over the subject matter of a suit in order for the action to proceed.  *See* FED. R. CIV. P. 12(b)(1).  A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction and the plaintiff bears the burden of proof that federal jurisdiction exists.  *Thornhill Publishing Co. v. General Telephone & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  "Wherever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."  FED. R. CIV. P. 12(h)(3).

## ANALYSIS

"Standing is a necessary element of federal-court jurisdiction."  *City of South Lake Tahoe v. California Tahoe Regional Planning Agency,* 625 F.2d 231, 233 (9th Cir. 1980).  In order to have standing under ERISA, a plaintiff must qualify as a participant, beneficiary, or fiduciary within the meaning of section 502(a) of the statute.  *See* 29 U.S.C. § 1132.  Under 29 U.S.C. § 1002(7), "participant" is defined as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers

United States District Court
For the Northern District of California

2

**United States District Court**
For the Northern District of California

1  employees of such employer . . . ."  A former employee is a "participant" if he or she has a

2  reasonable expectation of returning to covered employment or has a "colorable claim" to vested

3  benefits.  *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989).

4          Defendants contend that Plaintiffs lack standing to bring their suit because they do not

5  qualify as "participants" for purposes of ERISA.  Defendants assert that Plaintiffs are not

6  "participants" because Bay Environmental's plans were terminated, Plaintiffs are former employees

7  with no expectation of returning to employment with Bay Environmental, and the Plans' proceeds

8  were fully distributed to Plaintiffs in 2002.  Defendants also argue that Plaintiffs' financial loss

9  claims seek only damages, as opposed to "vested benefits," and thus must be dismissed under *Kuntz*

10  *v. Reese*, 785 F.2d 1410 (9th Cir. 1986).

11          Plaintiffs respond that Defendants' arguments fail to address the fact that the Plans at issue

12  here are  "defined contribution" plans, in which the value of the Plans' assets determines the value of

13  Plaintiffs' benefits.[2]  Thus, Plaintiffs assert that any losses to the Plans as a result of Defendants'

14  conduct must be restored to the Plans, which will in turn increase the value of the participants'

15  benefits.  Accordingly, Plaintiffs conclude that they are "participants" within the meaning of ERISA

16  and have standing to bring suit to recover losses to the Plans.

17          A discussion of this issue must begin with *Kuntz* and its progeny.  In *Kuntz*, the plaintiffs

18  were former employees who had received lump sum distributions of their vested pension benefits

19  prior to bringing suit under ERISA.  After initially deciding the ERISA standing issue in the

20  plaintiffs' favor, the Ninth Circuit reconsidered and reversed its decision, and concluded that:

21          [P]laintiffs are not participants because, as former employees whose vested
         benefits under the plan have already been distributed in a lump sum, the []
22          plaintiffs were not "eligible to receive a benefit," and were not likely to become
         eligible to receive a benefit, at the time that they filed the suit. Because, if
23          successful, the plaintiffs' claim would result in a damage award, not in an
         increase of vested benefits, they are not plan participants. The [] plaintiffs do not

24

25          [2]ERISA identifies two separate types of pension plans, "defined contribution" or "individual
   account" plans, and "defined benefit plans."  ERISA defines "defined contribution plan" as "a pension
26  plan which provides for an individual account for each participant and for benefits based solely upon
   the amount contributed to the participant's account, and any income, expenses, gains and losses . . .
27  which may be allocated to such participant's account." 29 U.S.C. § 1002(34). ERISA defines "defined
   benefit plan" as "a pension plan other than an individual account plan; except that a pension plan which
28  is not an individual account plan and which provides a benefit derived from employer contributions
   which is based partly on the balance of the separate account of a participant[.]" 29 U.S.C. § 1002(35).

3

allege that their vested benefits were improperly computed, rather they allege breach of fiduciary duty or of a duty to disclose information about benefits, thus any recoverable damages would not be benefits from the plan.

*Id.* at 1411; *see also Yancy v. American Petrofina, Inc.*, 768 F.2d 707, 709 (5th Cir. 1985) (finding that plaintiff who accepted lump sum distribution of all benefits due him under terms of plan when he retired lacked standing under ERISA to challenge later plan change).   Numerous other courts have cited *Kuntz* with approval.[3]  *See, e.g., Mitchell v. Mobil Oil Corp.*, 896 F.2d 463, 474 (10th Cir. 1990) (holding that former employees who sought damage award after receiving lump sum payment of vested benefits lacked ERISA standing); *Flynn v. Ballinger,* 1994 WL 758662 (N.D. Cal. May 9, 1994); *Gilquist v. Becklin*, 675 F. Supp. 1168, 1171 (D. Minn. 1987); *Winchester v. Pension Comm. of Michael Reese Health Plan, Inc.*, 765 F. Supp. 424, 425-26 (N.D. Ill. 1990).

However, as Defendants concede, subsequent Ninth Circuit cases have limited the applicability of *Kuntz's* holding.  In *Amalgamated Clothing & Textile Workers Union v. Murdock*, 861 F.2d 1406 (9th Cir. 1988), the plaintiffs alleged that the plan termination and distribution were part of one fiduciary's scheme to convert "ill-gotten" surplus plan assets to his own use.  Noting that "the *Kuntz* plaintiffs *did not allege* that the fiduciaries *personally profited* from a breach of their duty of loyalty to the plan," the court held that:

for the limited purpose of granting plan participants and beneficiaries standing to sue in cases such as this one, ill-gotten profits held in a constructive trust for plan participants and beneficiaries may be construed as equitably vested benefits under an ERISA plan. Even after plan participants and beneficiaries have received their actuarially vested benefits from the plan, the plan should be viewed as continuing to exist for the purpose of distributing the equitably vested benefits.

*Id.* at 1419.

In *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449 (9th Cir. 1995), the Ninth Circuit found standing under ERISA for pension plan participants based upon the Pension Annuitants Protection Act of 1994.  The *Kayes* court noted that the Pension Annuitants Protection Act of 1994 was enacted "to clarify that former participants or beneficiaries of terminated pension plans have standing to seek

---

[3]Additionally, while not citing *Kuntz* explicitly, the Sixth Circuit mirrored *Kuntz's* analysis in finding that plaintiffs, upon accepting an annuity representing "everything due them under the plan" when their participation terminated, had no further claim to any vested benefits, and thus lacked standing under ERISA.  *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 952 (6th Cir. 1990).

4

relief where, as here, a fiduciary breach has occurred involving the purchase of insurance contracts or annuities in connection with their termination as plan participants." *Id*. at 1455.

Here, Plaintiffs' attempt to distinguish *Kuntz* because it involved a defined benefits plan, rather than a defined contribution plan. The Court is unpersuaded. As an initial matter, the Court finds that neither *Kuntz*, nor any other subsequent Ninth Circuit case, has distinguished between "defined benefits" and "defined contribution" plans in determining standing issues under ERISA. Furthermore, subsequent cases have not hesitated to apply *Kuntz* to defined contribution plans. *See Flynn*, 1994 WL 758662, at *1 (involving an employee stock ownership plan); *Gilquist*, 675 F. Supp. at 1169 (same). *In Flynn*, the court found that plaintiffs lacked standing under ERISA to pursue their claims that fiduciaries of company's employee stock ownership plan had breached their fiduciary duties because the plaintiffs had received the benefits to which they were entitled at the time of their resignation. 1994 WL 758662, at *2. Similarly, in *Gilquist,* the court stated that "[the plaintiffs'] complaint charges mismanagement and breach of fiduciary duties. Any recovery by the plaintiffs would be damages for those alleged tortious acts, not a benefit under the plan." 675 F. Supp. at 1171. Accordingly, the Court finds that the full brunt of *Kuntz's* holding applies to the "defined contribution" plans at issue in this case.

Moreover, Plaintiffs' reliance upon *Murdock* and *Kayes* is misplaced. In *Murdock*, the fact that the defendant-fiduciaries allegedly violated their duty of loyalty by engaging in self-dealing was central to the court's holding. 861 F.2d at 1411. Plaintiffs have made no such allegations in their First Amended Complaint. Furthermore, in *Kayes*, the court created a narrow exception to *Kuntz*, finding standing under ERISA for former pension plan participants based upon the Pension Annuitants Protection Act of 1994. 51 F.3d at 1454-55. That narrow statutory exception is not present in the instant case and is irrelevant to the present motion.[4]

_____

[4]Despite Plaintiffs' assertion to the contrary, the Court also finds that *Werner v. Morgan Equipment Co.*, 1992 WL 453355 (N.D. Cal. August 5, 1992) is not analogous to the present case. In *Werner*, the court held that the plaintiffs had standing under ERISA based on allegations that their vested benefits were improperly computed. 1992 WL 453355, *3. Plaintiff contend that their complaint "specifically centers on the issue of whether their benefits were properly computed [.]" (Plaintiffs' Opposition to Motion to Dismiss at 12:1-2.)   The Court disagrees.   An examination of the First Amended Complaint reveals that Plaintiffs do not allege a claim for an ascertainable amount of improperly computed benefits, but rather allege imprecise financial losses due to "imprudent

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   Thus, applying the rationale of *Kuntz* to the instant case, the Court finds that Plaintiffs are not

2   truly seeking "vested benefits" due to them under the Plans.  Rather, as in *Kuntz*, Plaintiffs are

3   seeking recoverable damages for the breach of fiduciary duty.  Once Plaintiffs received their lump

4   sum payments from the Plans' assets in 2002, they were no longer "participants" under ERISA.

5   Because the remedy currently sought by Plaintiffs must be classified as damages, and not benefits

6   arising from the Plans, the Court finds that Plaintiffs have failed to allege that they have a "colorable

7   claim" to "vested benefits" within the meaning of ERISA.  Accordingly, Plaintiffs lack standing to

8   pursue their ERISA claims.  Thus, the Court **GRANTS** Defendants' motion to dismiss with

9   prejudice.[5]

10                                                    **CONCLUSION**

11   For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss with

12   prejudice.

13

14   **IT IS SO ORDERED.**

15

16   Dated: September __26_, 2005                    _____

17                                                    MARTIN J. JENKINS
                                                      UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27   investments."  (Compl. at ¶ 43.)

28       [5]At oral argument, Plaintiffs' counsel acknowledged that there are no additional facts, other than those already pled, to support Plaintiffs' benefit claims.

6