1  Teresa S. Renaker – CA State Bar No. 187800
   trenaker@lewisfeinberg.com
2  Lindsay Nako – CA State Bar No. 239090
   lnako@lewisfeinberg.com
3  LEWIS, FEINBERG, LEE, RENAKER & JACKSON P.C.
   1330 Broadway, Suite 1800
4  Oakland, CA 94612
   Telephone: (510) 839-6824
5  Facsimile: (510) 839-7839

6  Attorneys for the Class

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11 | JERRY VAUGHN and THERESA | Case No. C03-5725 SC
   | TRAVERS, |
12 | | **NOTICE OF MOTION AND MOTION**
   |                Plaintiffs, | **FOR AWARD OF ATTORNEYS' FEES**
13 | | **AND COSTS AND NAMED PLAINTIFF**
   |         v. | **INCENTIVE AWARDS**
14 | |
   | BAY ENVIRONMENTAL MANAGEMENT |
15 | INC., CAESAR NUTI, DENNIS VARNI, |
   | MARIO AQUILINO, LOYD BONFANTE |
16 | SR., JOSEPH DELLA ZOPPA, ESTATE OF |
   | RICHARD GRANZELLA SR., EDWARD |
17 | MENOSSE, PASQUALE PARENTI, FSC |
   | SECURITIES CORPORATION, and |
18 | JERROLD N. WEINBERG |
   | |
19 |                Defendants. |
   | |
20 | |
   | FSC SECURITIES CORPORATION and |
21 | JERROLD N. WEINBERG, |
   | |
22 | |
   |         Cross-Claimants, |
23 | |
   |         v. |
24 | |
   | BAY ENVIRONMENTAL MANAGEMENT |
25 | INC., ESTATE OF PINA J. BARBIERI, |
   | CAESAR NUTI, and DENNIS VARNI, |
26 | |
   |         Cross-Defendants. |
27 | |

28

                                i

# TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF ISSUES TO BE DECIDED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

   A.   Work Performed by Class Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   B.   Relevant Terms of the Settlement Agreement . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.   THE REQUESTED AWARD OF ATTORNEYS' FEES AND COSTS
      IS REASONABLE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

   A.   Class Counsel Are Entitled to an Award of Attorneys' Fees Out of the
        Common Fund. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        1.   The Equitable Common Fund Doctrine Applies When, as in This Case
             the Litigation Has Recovered a Certain and Calculable Fund on Behalf
             of a Class of Beneficiaries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        2.   The Fee Award Should Be Calculated as a Percentage of the Common
             Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        3.   The Requested Fee Award Is Within the Range of Reasonableness
             Established by the Ninth Circuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

   B.   The Requested Fee Award Is Fair and Reasonable. . . . . . . . . . . . . . . . . . . . . 13

        1.   Class Counsel Obtained Excellent Results for the Class . . . . . . . . . . . 13

        2.   Continued Litigation Presented a Significant Risk to the Class . . . . . . 14

        3.   Class Counsel Took On Significant Risks in Light of the Complexity
             of the Legal and Factual Issues in this Case. . . . . . . . . . . . . . . . . . . . . 15

        4.   The Length and Nature of Counsel's Relationship with the Named
             Plaintiffs Support an Award of Attorneys' Fees . . . . . . . . . . . . . . . . . 16

        5.   Awards in Similar Cases Demonstrate that the Requested Award Is
             Reasonable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        6.   Class Members Will Have the Opportunity to Review Class Counsel's
             Request for an Award of Attorneys' Fees Prior to the Deadline for
             Objections. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

   C.   Class Counsel Are Entitled to Recover Costs. . . . . . . . . . . . . . . . . . . . . . . . . 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

V.      THE INCENTIVE PAYMENTS REQUESTED ON BEHALF OF THE NAMED
        PLAINTIFFS ARE REASONABLE AND OF THE TYPE ROUTINELY
        AWARDED   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VI.     CONCLUSION   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

1

**TABLE OF AUTHORITIES**

2

Page No.

3

**FEDERAL CASES**

4

*Blum v. Stenson,*
465 U.S. 886 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5

*Boeing Co. v . Van Gemert,*
6      444 U.S. 472 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

7      *Berger v. Xerox Corp. Ret. Income Guarantee Plan,*
2004 WL 287902 (S.D. Ill. Jan. 22, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

8
*Central R.R. & Banking Co. v. Pettus,*
9      113 U.S. 116 (1885) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

10     *Edmonds v. United States,*
658 F. Supp. 1126 (D.S.C.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

11
*Garner v. State Farm Mutual Auto. Ins. Co.,*
12     2010 WL 1687832 (Apr. 22, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

13     *Harris v. Marhoefer,*
24 F.3d 16 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
14
*In re Activision Sec. Litig.,*
15     723 F.Supp. 1373 (N.D. Cal. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11, 17

16     *In re ADC Telecomms., Inc. ERISA Litig.,*
No. 03-2989 (D. Minn. Oct. 16, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
17
*In re Ampicillin Antitrust Litig.,*
18     526 F. Supp. 494 (D.D.C. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

19     *In re CMS Energy ERISA Litig.,*
2006 WL 2109499 (E.D. Mich. June 27, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
20
*In re Heritage Bond Litig.,*
21     2005 WL 1594403 (C.D. Cal. June 10, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

22     *In re Marsh ERISA Litig.,*
265 F.R.D. 128 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
23
*In re Mercury Interactive Corp. Sec. Litig.,*
24     618 F.3d 988 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

25     *In re Omnivision Technologies, Inc.,*
2007 WL 4293467 (N.D. Cal. Dec. 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 17
26
*In re Pacific Enterprises Sec. Litig.,*
27     47 F.3d 373 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28     *In re Rite Aid Corp. Securities Litig.,*

396 F.3d 294 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Westar Energy, Inc., ERISA Litig.,*
No. 03-4032 (D. Kan. July 27, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Knight v. Red Door Salons, Inc.,*
2009 WL 248367 (N.D. Cal. Feb. 2, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Linney v. Cellular Alaska P'ship,*
1997 WL 450064, (N.D. Cal. July 18, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Paul, Johnson, Alston & Hunt v. Graulty,*
886 F.2d 268 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 9, 11

*Rodriguez v. West Publ'g Corp.,*
563 F.3d 948 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Romero v. Producers Dairy Foods, Inc.,*
2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Six Mexican Workers v. Arizona Citrus Growers,*
904 F.2d 1301 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 9, 12

*Spann v. AOL Time Warner Inc.,*
2005 WL 1330937 (S.D.N.Y. Jun. 7, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Staton v. Boeing Co.,*
327 F.3d 938 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Swedish Hosp. Corp. v. Shalala,*
(D.C. Cir. 1993) 1 F.3d 1261 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Torrisi v. Tuscon Elec. Power Co.,*
8 F.3d 1370 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

*Trustees v. Greenough,*
105 U.S. 527 (1881) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Van Vranken v. Atlantic Richfield Co.,*
901 F. Supp. 294 (N.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Vaughn v. Bay Envtl. Mgmt., Inc.,*
567 F.3d 1021 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 15

*Vincent v. Hughes Air W. Inc.,*
557 F.2d 759 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Vizcaino v. Microsoft Corp.,*
290 F.3d 1043 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**OTHER AUTHORITIES**

Newberg on Class Actions § 14.6 (4th ed. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS AND NAMED PLAINTIFF INCENTIVE AWARDS**

NOTICE IS HEREBY GIVEN that on February 18, 2011, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the above-entitled Court, Plaintiffs Jerry A. Vaughn and Theresa Travers ("Named Plaintiffs") will and hereby do move the Court to approve an award of attorneys' fees and reimbursement of litigation costs to Lewis, Feinberg, Lee, Renaker, & Jackson, P.C. ("Class Counsel"), and to approve incentive awards of $15,000 each to the Named Plaintiffs.

This motion is based on the Memorandum of Points and Authorities filed herewith and in support of this Motion, the Declaration of Teresa S. Renaker in Support of Plaintiffs' Unopposed Motion for Award of Attorneys' Fees and Costs, the terms of the Stipulation and Agreement of Compromise and Settlement of Class Action (Dkt. #217-2), and all other papers filed in this action.

Dated:    November 22, 2010                          Respectfully submitted,

                                                     LEWIS, FEINBERG, LEE,
                                                     RENAKER & JACKSON, P.C.

                                                     By:   /s/ *Teresa S. Renaker*
                                                            Teresa S. Renaker

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

To date, Class Counsel have devoted over 2,100 hours of time and more than $88,962.13 in out-of-pocket expenses to this litigation on behalf of the Plaintiff Class of participants in the Bay Environmental Pension Plan and the Bay Environmental Retirement Plan (collectively, "the Plans").  Their efforts have secured an excellent settlement result for the Class, in the form of a $1,900,000 settlement fund, the bulk of which will be distributed to Class Members as tax-deferred benefits from the revived Plans.  Moreover, Class Counsel's work on this case resulted in new law in the Ninth Circuit establishing the right of individual account pension plan participants to bring ERISA[1] breach of fiduciary duty claims even after they have received distributions of benefits.  *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021 (9th Cir. 2009).

Class Counsel now seek an attorneys' fee award of $570,000, even though their lodestar far exceeds that amount, at $873,186.25 as of November 19, 2010.  *See* Declaration of Teresa S. Renaker in Support of Plaintiffs' Motion for Award of Attorneys' Fees and Costs and Named Plaintiff Incentive Awards ("Renaker Dec."), ¶ 5 & Exh. A, filed herewith.  At 30 percent of the common fund, the fee award sought is within the usual range of percentages of the common fund awarded as attorneys' fees.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047, 1050 n.4 (9th Cir. 2002); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).   The requested award is fair, reasonable, and appropriate under the common fund doctrine.  *See Six (6) Mex. Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)).

Class Counsel also seek reimbursement of litigation costs and expenses in the amount of $88,962.13 as of November 19, 2010.  Renaker Dec., ¶ 11 & Exh. B.  As explained herein, the

---

[1] The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*.

1

STIPULATION AND [PROPOSED] ORDER CONT. STATUS CONF. AND PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
[CASE NO. C03-5725 SC]

costs were incurred in connection with the seven-year prosecution of the action and the execution of the settlement, and are reasonable and proper.

Finally, Class Counsel seek payment of incentive awards to the two Named Plaintiffs in the amount of $15,000 each, in recognition of their service to the Class. These payments are consistent with those previously awarded in this district and were well-earned by the time and effort expended by Mr. Vaughn and Ms. Travers on behalf of the Class.

The attorneys' fees and expenses and the incentive awards sought by Class Counsel are described in the Notice of Class Action Settlement ("Settlement Notice") (Dkt. #217-4) sent to all Class Members on November 18 and 19, 2010. All of the Class Members will have the ability to review the information provided in the Settlement Notice and in this motion prior to the deadline for objections to the Settlement, which is January 3, 2011.

## II. STATEMENT OF ISSUES TO BE DECIDED

A. Whether an award of attorneys' fees of $570,000 is reasonable, in light of the length, risk, and complexity of this case; the lodestar value of the legal services provided; and the size of the $1,900,000 common fund established by the Stipulation and Agreement of Compromise and Settlement of Class Action ("Settlement Agreement") (Dkt. #217-2).

B. Whether reimbursement of $88,962.13 in litigation costs and expenses expended by Class Counsel is appropriate, where the costs incurred are reasonable, proper, and necessary to the litigation.

C. Whether incentive payments of $15,000 each to Named Plaintiffs Jerry Vaughn and Theresa Travers are reasonable, in light of the time and effort that they expended and the commitment that they have demonstrated to the Class.

## III. STATEMENT OF FACTS

As described in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action

Settlement ("Motion for Preliminary Approval" or "MPA") (Dkt. #217), Named Plaintiffs filed this action nearly seven years ago, following an extensive pre-litigation investigation.  MPA at 3. Over the past seven years, Class Counsel and the Named Plaintiffs have aggressively prosecuted the claims of the Class.  MPA at 3-5.

**A.  Work Performed by Class Counsel**

After conducting a search for potential counsel, Named Plaintiffs and certain other Plan participants retained Class Counsel in early 2003 to evaluate their situation with respect to the Plans.  Class Counsel obtained and reviewed documentation from sources including Plan participants, the United States Department of Labor, and the Plan's former institutional trustee, Mechanics Bank, and also consulted with an investment expert.  Renaker Dec., ¶ 6.

Following this investigation, Plaintiffs filed their Complaint on December 18, 2003, naming Plan fiduciaries Bay Environmental Management, Inc., Caesar Nuti, Dennis Varni, Pina J. Barbieri, and Mechanics Bank as Defendants.  (Dkt. #1.)  The parties exchanged initial disclosures, and Plaintiffs determined that it was appropriate to voluntarily dismiss Mechanics Bank from the suit.  (Dkt. #6, 7.)

On July 1, 2004, the parties stipulated to class certification.  (Dkt. #18, 19.)  Soon after, the parties began preparing for mediation.  (Dkt. #21, 24.)

On March 14, 2005, Plaintiffs amended the Complaint to add additional defendants identified through discovery.  (Dkt. #40.)  The newly added defendants, FSC Securities Corporation and Jerrold N. Weinberg, would not stipulate to class certification.  As a result, Plaintiffs filed a motion for class certification on July 1, 2005.  (Dkt. #54.)  At the time FSC and Mr. Weinberg filed their opposition to Plaintiffs' motion for class certification, they simultaneously moved to dismiss the case based on lack of subject matter jurisdiction, arguing that Plaintiffs were no longer "participants" in the Plans within the meaning of ERISA, and

3

therefore lacked standing to pursue their ERISA claims.  (Dkt. #67.)  Both the motion for class

certification and the motion to dismiss were fully briefed, and the case was dismissed by Judge

Jenkins on September 26, 2005.  (Dkt. #67, 76, 81, 84, 89, 90.)  Plaintiffs appealed.  (Dkt. #91.)

Deciding an issue of first impression in the Circuit, the Court of Appeals reversed the dismissal

and reinstated Plaintiffs' claims, holding that former employees who have received distributions

of their benefits under a defined contribution pension plan continue to be "participants" with

standing to bring claims for breach of fiduciary duty under ERISA, where, if successful, they will

recover additional plan benefits.  *Vaughn*, 567 F.3d at 1025-27.  (Dkt. #101-03.)

In July 2009, the parties returned to this Court and resumed the discovery process.  On

August 21, 2009, the Bay Environmental Defendants served written discovery responses

indicating that six Bay Environmental board members served as additional fiduciaries to the Plan.

(Dkt. #123 at 2:9-11.)  Plaintiffs amended the Complaint to add these defendants.  (Dkt. #124.)

In total, Class Counsel drafted and served two sets of interrogatories, two sets of requests

for admission, and three sets of requests for production of documents on the Bay Environmental

Defendants.  In response, the Bay Environmental Defendants produced over 22,000 pages of

documents, including nearly 14,000 pages of documents produced on the eve of the discovery

deadline in December 2009.  Renaker Dec., ¶ 7.  In addition, Class Counsel drafted and served

one set of requests for production of documents on Defendants FSC and Mr. Weinberg, which

resulted in the production of 560 pages of documents, and subpoenaed and received nearly 6,000

pages of documents from the Plans' third-party administrator, Pension Specialists, Inc.  *Id*. Class

Counsel also prepared and served responses to document requests, interrogatories, and requests

for admission propounded by Defendants.  *Id*. at  ¶ 6.

In addition, between October 2, 2009, and February 25, 2010, Class Counsel took the

depositions of each of the surviving individual Bay Environmental defendants, Mr. Weinberg

4

(twice), Bay Environmental's controller, and two corporate representatives pursuant to Rule 30(b)(6).  Renaker Dec., ¶ 6.  Class Counsel also prepared the Named Plaintiffs for their depositions and defended their depositions.  *Id*.

Class Counsel also conducted extensive expert discovery.  In total, the parties identified four testifying experts.  Renaker Dec., ¶ 8.  Plaintiffs disclosed as their expert Jon C. Chambers of the investment consulting firm Schultz Collins Lawson Chambers, Inc., in San Francisco, whom Plaintiffs had retained to consult on the case prior to filing their Complaint in 2003.  *Id*.  The Bay Environmental Defendants disclosed as their experts Stephen P. Grenadier, a Professor of Finance at Stanford University, and C. Frederick Reish, an attorney with the Reish & Reicher law firm in Los Angeles.  *Id*.  Defendants FSC and Mr. Weinberg disclosed as their expert John Maine, a former investment broker.  *Id*.  Each expert prepared a report and a rebuttal report.  *Id*.  The parties also exchanged documents produced by their respective experts.  *Id*.  Class Counsel deposed Defendants' three experts and defended the deposition of Mr. Chambers.  *Id*.

On August 7, 2009, Plaintiffs filed a second motion for class certification.  (Dkt. #112.)  The Court certified the Class and ordered Class Counsel to notify the Class Members, which Class Counsel did in October 2009.  (Dkt. #135, 136, 141, 142.)  Renaker Dec., ¶ 14.

On May 20, 2010, the parties filed dispositive motions.  Defendants filed two motions for summary judgment on Plaintiffs' claims (Dkt. #152, 158), and Plaintiffs filed a motion for partial summary judgment as to the fiduciary status of Defendants FSC and Mr. Weinberg.  (Dkt. #162.)  The motions were fully briefed.  (Dkt. #168, 173, 180, 181, 182, 190, 198.)  All parties also filed evidentiary objections to evidence filed in support of the motions for summary judgment.  (Dkt. #174, 179, 194, 203.)

The parties also attended two separate full-day mediations after returning to this Court.  In April 2010, all parties and their lawyers attended a full-day mediation with mediator Michael

Dickstein in San Francisco.  Renaker Dec., ¶ 9.  The parties were unable to reach an agreement.

*Id.*  Following summary judgment briefing, the parties began preparing for trial, which was set to

commence on September 7, 2010.  (Dkt. #148.)  On July 27, 2010, the parties and their lawyers

attended a second full-day mediation in San Francisco, this time with mediator Ronald Dean.  At

this mediation, the parties agreed to the Settlement.  (Dkt. #206.)  The Settlement was reached

after arms-length negotiations by and among the parties.  Additional details regarding the terms of

the Settlement Agreement and its implementation have continued to be negotiated between the

parties as they have arisen.  On October 12, 2010, Plaintiffs filed their unopposed motion for

preliminary approval of class action settlement.  (Dkt. #217.)  All Defendants filed statements of

non-opposition.  (Dkt. #218, 219.)

As of November 19, 2010, Class Counsel have dedicated 2,108.15 hours to this litigation,

for a total lodestar of $873,186.25.  Renaker Dec., ¶ 5 & Exh. A.  This lodestar amount is

$303,186.25 above the $570,000 requested here.  Class Counsel has also incurred $88,962.13 in

costs related to the litigation, in particular fact discovery, expert discovery, and mediation.

### B.  Relevant Terms of the Settlement Agreement and Class Notice.

Section 5.5 of the Settlement Agreement provides:

> Pursuant to the requirements of Civil Local Rule 7, Class Counsel shall file a
> motion for and award of attorney's fees and expenses from the Settlement Fund,
> which motion shall be heard at the time of the Final Approval and Fairness
> Hearing.  At the time of filing such motion, Class Counsel may also apply for
> incentive awards from the Settlement Fund on behalf of Named Plaintiffs.
> Defendants shall not oppose either application.

In the Settlement Notice, mailed on or before November 19, 2010, Class Counsel notified

the Class that they would apply to the Court for an order awarding attorneys' fees of 30

percent of the settlement fund, totaling $570,000, and reimbursing expenses incurred as a

result of the litigation, approximately $80,000.  Settlement Notice, pp. 5, 12.  The

Settlement Notice also notified the Class that the Named Plaintiffs would apply to the

6

Court for compensation up to $15,000 each in recognition of their service to the Class.  *Id.*

at 6.

## IV.   THE REQUESTED AWARD OF ATTORNEYS' FEES AND COSTS IS REASONABLE.

This Court has held, "It is well established that 'a private plaintiff, or his attorney, whose

efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to

recover from the fund the costs of his litigation, including attorneys' fees.'"  *Knight v. Red Door*

*Salons, Inc.*, 2009 WL 248367, at *5 (N.D. Cal. Feb. 2, 2009) (Conti, J.) (quoting *Vincent v.*

*Hughes Air W. Inc.*, 557 F.2d 759, 769 (9th Cir. 1977)).

In *Blum*, 465 U.S. at 900 n.16, the Supreme Court stated that reasonable fees under the

common fund doctrine are determined as a percentage of the fund.  This Court also previously

concluded, "[U]se of the percentage method in common fund cases appears to be dominant [in the

Ninth Circuit]."  *Knight*, 2009 WL 248367, at *5 (citing *Vizcaino*, 290 F.3d at 1047; *Six Mex.*

*Workers*, 904 F.2d at 1311; *Paul Johnson*, 886 F.2d at 272).

*Knight* cautions:

> It is not sufficient to arbitrarily apply a percentage; rather the district court must show why that percentage and the ultimate award are appropriate based on the facts of the case. *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved a number of factors which may be relevant to the district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See id.* at 1048-50. It is no surprise that these factors are similar to those used in evaluating the adequacy of a settlement.

2009 WL 248367, at *5.

Here, the requested award of $570,000, or 30 percent of the common fund, is appropriate

based on the facts of this case.  Additionally, reimbursement of litigation costs of $88,962.13

incurred in pursuing this matter is reasonable, for the reasons set forth below.

7

**A.     Class Counsel Are Entitled to an Award of Attorneys' Fees Out of the Common Fund.**

       **1.     The Equitable Common Fund Doctrine Applies When, as in This Case, the Litigation Has Recovered a Certain and Calculable Fund on Behalf of a Group of Beneficiaries.**

It is a long-standing principle that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have an equitable right to be compensated from that fund as a whole for their successful efforts in creating it. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (stating that the Court "has recognized consistently that a litigant or a lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole"); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 127 (1885) (recognizing common fund doctrine); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (same). The common fund doctrine rests on the understanding that attorneys should normally be paid by their clients, and that when the attorneys' unnamed class member clients have no express retainer agreement, it would result in unjust enrichment not to pay attorneys' fees out of the common fund. *Boeing*, 444 U.S. at 478.

In this case, the litigation has resulted in a Settlement Fund of $1,900,000 (less attorney's fees, costs, and the contingent cost fund) to be distributed to all participants in the Plans, with the exception of those participants named as defendants in the litigation. Because none of these individuals has paid Plaintiffs' counsel fees for their efforts during the litigation, equity requires them to pay a fair and reasonable fee, based on what the market would traditionally require, no less than if they had hired private counsel to litigate their cases individually. *See id.* at 479-81.

8

**2.** **The Fee Award Should Be Calculated as a Percentage of the Common Fund.**

When contingency fee litigation has produced a common fund, the Ninth Circuit has held that it is appropriate to calculate a reasonable fee by awarding a percentage of the total fund. *See, e.g., Six Mex. Workers*, 904 F.2d at 1311 ("[A] reasonable fee under the common fund doctrine is calculated as a percentage of the recovery."); *Paul Johnson,* 886 F.2d at 272 . This Court has noted, "The advantages of using the percentage method have been described thoroughly by other courts. *See, e.g., In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374-77 (N.D. Cal. 1989) (collecting authority and describing benefits of the percentage method over the lodestar method)." *In re Omnivision Technologies, Inc.*, 2007 WL 4293467, *8 (N.D. Cal. Dec. 6, 2007) (Conti, J.).

The percentage of the fund method is appropriate for a number of well-recognized reasons. Importantly, the percentage method accomplishes fee spreading in a manner that comports with the legal marketplace, where counsel's success is frequently measured in terms of the results achieved. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases "the monetary amount of the victory is often the true measure of [counsel's] success"). Further, when clients do not pay an ongoing hourly fee to their counsel, they typically negotiate an agreement in which counsel's fee is based upon a percentage of any recovery. The percentage of the fund approach mirrors this aspect of the market and, accordingly, reflects the fee that would have been negotiated by the class members in advance, had such negotiations been feasible, given the prospective uncertainties and anticipated risks and burdens of the litigation. *See, e.g., Paul Johnson*, 886 F.2d at 271.

The percentage approach helps incentivize highly qualified attorneys to bring large, complex class actions, even though it is impossible in such cases to negotiate a fee with the

9

unnamed class members in advance.  Basing the common fund fee award on a percentage of the fund also encourages counsel to spend time efficiently and to focus on maximizing the size of the class's recovery, rather than their own lodestar hours.  *Swedish Hospital*, 1 F.3d at 1269. Finally, the percentage method is far easier for courts to calculate than any alternative method. *Id*. at 1269-70; *Activision*, 723 F. Supp. at 1378-79.

In light of these benefits, courts have resoundingly approved the percentage of the fund method to calculate a reasonable fee award in common fund cases.  *See Activision*, 723 F. Supp. at 1378 (collecting cases and describing the benefits of a percentage method over the lodestar method for awarding attorneys' fees in common fund settlements).  Thus, in this case, counsel's common fund fees should be determined as a percentage of the total fund that will be distributed to the class.

Lodestar analyses are not necessary in common fund percentage cases, but can be used to evaluate the reasonableness of a percentage based fee award.  *See In re Rite Aid Corp. Securities Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (reviewing "abridged" lodestar cross-check and noting that "the lodestar cross-check does not trump the primary reliance on the percentage of common fund method"); *but see Swedish Hospital Corp.*, 1 F.3d at 1266-67 & n.3 (discontinuing use of lodestar cross check because of its perceived faults).  In this case, the lodestar "cross-check" demonstrates that the 30 percent requested attorneys' fees award is more than reasonable, as the award falls far short of compensating the attorneys for all their time expended on this case.[2]

_____

[2]  The lodestar is calculated by multiplying counsel's reasonable hourly rates by the number of hours reasonably expended on the litigation.  *D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1383 (9th Cir. 1990).  The reasonable hourly rate is determined by considering the "experience, skill, and reputation of the attorney requesting fees."  *Id.* at 1384.  "The court shall use the prevailing market rate in the community for similar services of lawyers 'of reasonably comparable skill, experience and reputation.'"  *Id.*  Class counsel's hourly rates used to calculate their lodestar in this case meet this standard.  Renaker Dec., ¶¶ 12, 13 & Exhs. C-F; Declaration

10

3.   **The Requested Fee Award Is Within the Range of Reasonableness Established by the Ninth Circuit.**

In determining what constitutes a fair and reasonable percentage of a settlement fund for purposes of calculating common fund fees, the Ninth Circuit has stated that courts look to a "benchmark" percentage of 25 percent of the total fund, with 20 to 30 percent as the usual range for fee awards.[3] *Vizcaino*, 290 F.3d at 1047 & 1050 n.4; *Paul Johnson*, 886 F.2d at 272. However, a court in this district has held, "[T]his court concludes that in class action common fund cases the better practice is to set a percentage fee and that, absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%." *Activision*, 723 F. Supp. at 1378. More recently, district courts in the Ninth Circuit have confirmed that "in most common fund cases, the award exceeds that [25 percent] benchmark." *Knight*, 2009 WL 248367, at *6 (awarding fee of 30% of $500,000 settlement); *see also Romero*, 2007 WL 3492841, at *4 (noting that "fee awards in class actions average around one-third of the recovery") (quoting 4 Newberg and Conte, *Newberg on Class Actions* § 14.6 (4th ed. 2007)); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997)

---

of Susan Martin in Support of Motion for Attorneys' Fees ("Martin Dec.") (filed herewith), ¶¶ 10, 11; Declaration of Mary Ellen Signorille in Support of Plaintiffs' Motion for Attorneys' Fees ("Signorille Dec.") (filed herewith), ¶ 18. Likewise, the 2,108.15 hours expended by Class Counsel are reasonable given the duration and complexity of this litigation.

[3] The Ninth Circuit's observation in *Vizcaino* that the majority of fee awards in common fund cases were "clustered in the 20-30 percent range" was based on a survey of settlements in so-called "megafund" cases – common fund settlements of $50 million to $200 million. *Vizcaino*, 290 at 1050 n.4 & App. In common fund settlements of less than $50 million, such as this one, courts have awarded a higher percentage of the common fund as attorneys' fees. *See, e.g.*, *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming award equal to 33 percent of the common fund); *Knight*, 2009 WL 248367, at *6-7 (awarding 30 percent of $500,000 settlement fund); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (awarding 33% of $240,000 settlement fund); *see also In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 498 (D.D.C. 1981) (awarding 45 percent of $7.3 million settlement fund).

11

STIPULATION AND [PROPOSED] ORDER CONT. STATUS CONF. AND PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [CASE NO. C03-5725 SC]

("Courts in this district have consistently approved attorneys' fees which amount to approximately one-third of the relief procured for the class.").

It is well-established that the "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (quoting *Six Mex. Workers*, 904 F.2d at 1311). In approving an award of 28 percent of the $96,885,000 settlement fund, the Ninth Circuit in *Vizcaino* emphasized that the court must "take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit discussed five "relevant circumstances" on which the district court had appropriately relied: (1) the results obtained for the class; (2) the risk undertaken by counsel; (3) incidental or non-monetary benefits conferred by the settlement; (4) the terms of the professional relationship with the client; and (5) the financial burden of representation borne by Class Counsel.[4] *See id.* at 1048-50. *See also Knight*, 2009 WL 248367, at *5 (quoted above on p. 7).

As discussed below, when all the circumstances of this case are considered and the factors in *Vizcaino* are taken into account, an award of 30 percent of the common fund is appropriate in light of the special circumstances present in this case.

---

[4] The district court in *Vizcaino* had also considered the market rate. *Id.* at 1049. The Ninth Circuit stated that this was not an abuse of discretion, but it cautioned that in the context of class action litigation, an "exclusively market based approach . . . may in many cases be illusory," because "[t]he 'market' is simply counsel's expectation of court awarded fees." *Id.* at 1049. It observed that:

> Where evidence exists, such as here, about the percentage fee to which some plaintiffs agreed *ex ante,* that evidence may be probative of the fee award's reasonableness. But, to the extent that a market analogy is on point, in most cases it may be more appropriate to examine lawyers' reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size.

*Id.*

B. <u>**The Requested Fee Award Is Fair and Reasonable.**</u>

The requested 30-percent common fund award is justified by facts of this case, including the excellent results obtained for the class, the financial risks undertaken by Class Counsel, the complexity of the legal and factual issues and the skill required to litigate this case, the nature of Class Counsel's relationship with their clients, and awards in similar cases.

In addition, the amount requested herein is equal to only 64.9% percent of Class Counsel's lodestar.

### 1.    Class Counsel Obtained Excellent Results for the Class.

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Knight*, 2009 WL 248367, at *9 (citing *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005)); *see also Vizcaino*, 290 F.3d at 1048.  As described in Plaintiffs' Motion for Preliminary Approval, the $1,900,000 recovery obtained by Class Counsel in this case is well within the range of potential recoveries that could have been awarded by this Court, had Plaintiffs succeeded at trial.  MPA at 8-9.  Thus, the Settlement likely obtained for the Class most or all of what could have been gained through trial, while removing the risk of outright loss inherent in continued litigation.

In addition, Class Counsel obtained more than just the cash value of the settlement fund.  *See Viczaino*, 290 F.3d at 1049 (noting value of "generat[ing] benefits beyond the cash settlement fund").  Pursuant to the terms of the settlement agreement, the Plans are to be revived for the purpose of distributing the settlement funds as tax-deferred plan benefits.  (Dkt. #217-2, § 5.3.)  Thus, the settlement payments likely will be distributed from a qualified retirement plan, making them eligible for direct rollover to Class Members' individual retirement accounts or other employers' plans, where the amounts can grow tax-free until participants withdraw them for retirement income.  This treatment of the settlement proceeds as

13

Plan benefits has a direct financial benefit for each Class Member and significantly increases the value of the settlement fund.  Moreover, the Settlement provides that the cost of "reviving" the Plans for this purpose will be borne entirely by Defendants and not by the Class.  Finally, the Settlement Fund was placed in escrow prior to preliminary approval and will be invested for the benefit of the Class until disbursement to the Plans for distribution to the Class Members.

### 2.   Continued Litigation Presented a Significant Risk to the Class.

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees."  *Knight*, 2009 WL 248367, at *5 (citing *Vizcaino*, 290 F.3d at 1038).  Aside from the general risks and complexity associated with protracted class action litigation (described below), this case had specific risks and complexity.

As described in Plaintiffs' Motion for Preliminary Approval, Plaintiffs alleged that all of the named defendants were fiduciaries to the Plans who breached their fiduciary duties by investing the Plans' assets imprudently and failing to diversity the Plans' investments.  MPA at 3.  Plaintiffs further alleged that Defendants' fiduciary breaches caused losses to the Plans that were separate and apart from the losses caused by a declining market, and that Defendants were liable to make good to the Plans any losses caused by their breaches.  *Id.*  Defendants asserted a number of defenses, including lack of fiduciary status and lack of loss causation, and vigorously disputed Plaintiffs' claims that they breached their fiduciary duties to the Plans and their participants.  MPA at 8.  The parties' expert witnesses also disputed whether Defendants acted prudently in investing the Plan's assets, whether the Plan's investments were properly diversified, and whether investment losses suffered by the Plan resulted from any breach by Defendants.  *Id.*

14

At the time of the Settlement, Plaintiffs faced two separate motions for summary

judgment on all of their claims.  Plaintiffs, in turn, moved for partial summary judgment,

limited to the question of the fiduciary status of Defendants FSC and Mr. Weinberg.  Thus,

Plaintiffs faced the risk of losing their case entirely.  The best possible outcome for Plaintiffs at

the summary judgment stage would have been proceeding to trial against all eleven defendants.

> ### 3. Class Counsel Took On Significant Risks in Light of the Complexity of the Legal and Factual Issues in this Case.

"The 'prosecution and management of a complex national class action requires unique

legal skills and abilities.'" *Knight*, 2009 WL 248367, at *6 (quoting *Edmonds v. United States*,

658 F. Supp. 1126, 1137 (D.S.C.1987)). The fairness of this fee award is further supported by

the high quality of Class Counsel's legal representation in litigating and mediating a complex

and risky case.  ERISA litigation is recognized to be time-consuming and difficult, and few

attorneys will represent plan participants in such cases.  Signorile Dec., ¶ 13; Martin Dec., ¶ 8.

Class Counsel in this case have extensive knowledge and experience in ERISA litigation,

including breach of fiduciary duty cases and class actions.  Renaker Dec., ¶¶ 12, 13 & Exhs. C-

F; Signorile Dec., ¶ 14; Martin Dec., ¶¶ 7-8.  The effort and skill expended by Class Counsel to

position the case to obtain the best possible outcome at mediation is described above in Section

III(A) and in the accompanying Renaker Declaration.

In addition to the risks described above, Plaintiffs faced and overcame significant

hurdles to successfully settle this case.  In September 2005, Plaintiffs' case was dismissed in its

entirety based on the Court's conclusion that Plaintiffs lacked standing to pursue their claims.

(Dkt. #89.)  Plaintiffs revived their case on appeal to the Ninth Circuit Court of Appeals and

won a reversal of the district court's decision.  *Vaughn*, 567 F.3d at 1023; *see Vizcaino*, 290

F.3d at 1049 (noting the importance of class counsel "reviving their case on appeal").  Class

15

Counsel's advocacy in the Ninth Circuit also established new law regarding former employees' standing under ERISA that will be beneficial to future plaintiffs.

Finally, the requested award continues to embody the risk of litigation, as it falls far short of Class Counsel's estimated lodestar of $873, 186.25 to date.  Thus, Class Counsel's request equals only 65% of the lodestar value of the legal services provided to the Class.

### 4.     The Length and Nature of Counsel's Relationship with the Named Plaintiffs Support an Award of Attorneys' Fees.

The Ninth Circuit has held that an award of attorneys fees is appropriate to "reward[] class counsel not only for the hours they had in the case to the date of the settlement, but for carrying the financial burden of the case, effectively prosecuting it and, by reason of their expert handling of the case, achieving a just settlement for the class."  *Torrisi*, 8 F.3d at 1377; *see also Knight*, 2009 WL 248367, at *6 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."); *Vizcaino*, 290 F.3d at 1050 ("These burdens are relevant circumstances.").

Class Counsel have represented Named Plaintiffs since 2003.  Over the past seven years, Class Counsel have conducted significant fact and expert discovery, including fourteen depositions of the parties and relevant fact and corporate witnesses, review of over 36,000 pages of documents, the exchange of two sets of expert reports, and depositions of four testifying experts; litigated an appeal to the Ninth Circuit that resulted in the reversal of an unfavorable ruling; and submitted and responded to extensive briefing in this Court, including a motion to dismiss, two motions for class certification, two full motions for summary judgment, and one partial motion for summary judgment.

16

Class Counsel accepted and litigated this class action solely on a contingency fee basis, and Class Counsel has received no compensation in the litigation to date.  There has never been certainty that counsel would be paid for their time or reimbursed for the considerable expenses incurred.  Regardless of the risk, as the Renaker Declaration reflects, Class Counsel's diligent, efficient, and creative pursuit of this matter positioned Plaintiffs to successfully settle this case for $1,900,000, and so achieve redress for the entire Class, and avoid the inevitable expense and risk attendant on a trial and possible further appeals.  *See generally* Renaker Dec., ¶¶ 6-10.

> **5.    Awards in Similar Cases Demonstrate that the Requested Award Is Reasonable.**

As described above, this Court has noted, "[I]n most common fund cases, the award exceeds [a 25%] benchmark. The *Activision* court concluded that, where a court adopts the percentage method, 'absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%.'" *Omnivision*, 2007 WL 4293467, at *10 (quoting *Activision*, 723 F.Supp. at 1378) (internal citations omitted).

Indeed, attorneys' fees awards in recent class action ERISA settlements are consistent with this Court's findings.  Fee recoveries at or close to 30 percent have not been unusual.  *See e.g., In re Marsh ERISA Litig.*, 265 F.R.D. 128, 146 (S.D.N.Y. 2010) (awarding fee of 33.33% of $35 million settlement); *In re ADC Telecomms., Inc. ERISA Litig.*, No. 03-2989 (D. Minn. Oct. 16, 2006) (awarding fee of 30% of $3.25 million settlement); *In re Westar Energy, Inc., ERISA Litig.*, No. 03-4032 (D. Kan. July 27, 2006) (awarding fee of 30% of $9.25 million settlement); *In re CMS Energy ERISA Litig.*, 2006 WL 2109499, at *2-3 (E.D. Mich. June 27, 2006) (awarding fee of 28.5% of $28 million settlement); *Spann v. AOL Time Warner Inc.*, 2005 WL 1330937, *8 (S.D.N.Y. Jun. 7, 2005) (awarding fee of 33% of $2.9 million settlement); *Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 2004 WL 287902, at *2 (S.D. Ill. Jan. 22, 2004) (awarding 29% of settlement fund).

17

1    Thus, the requested award is in line with those ordered in similar cases.

2        **6.    Class Members Will Have the Opportunity to Review Class
             Counsel's Request for an Award of Attorneys' Fees Prior to the
3            Deadline for Objections.**

4        Finally, Class Members will be afforded ample opportunity to review Class Counsel's

5    fee request and object if they choose before this Court grants final approval of the Settlement.

6    *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994-95 (9th Cir. 2010).  The

7    Settlement Notice informs Class Members that this motion is available for review on Class

8    Counsel's website, and also informs Class Members of their ability to object to any part of the

9    Settlement, including the attorneys' fees sought by Class Counsel.  Settlement Notice at 5, 12,

10   13.  Thus, Class Members will have the opportunity to review the Settlement Notice and this

11   motion prior to the deadline to raise objections to the settlement.  Any Class Member objections

12   to Class Counsel's request will be heard by this Court prior to its decision on this motion.

13       **C.  <u>Class Counsel Are Entitled to Recover Costs</u>.**

14       Class Counsel request reimbursement from the fund of out-of-pocket expenses they

15   incurred during this litigation.  Reimbursement for these expenses from the common fund is

16   appropriate for the same reasons attorneys' fees should be paid out of the fund:  all beneficiaries

17   should bear their fair share of the costs of the litigation, and these are the normal costs of

18   litigation that counsel traditionally bill their paying clients.  *See* 1 Alba Conte, *Attorney Fee*

19   *Awards* § 2:8 at 50-51 (3d ed. 2004) ("The prevailing view is that expenses are awarded in

20   addition to the fee percentage.")).  As one commentator has written:

21       [A]n attorney who creates or preserves a common fund by judgment or settlement
         for the benefit of a class is entitled to receive reimbursement of reasonable fees
22       and expenses involved.  The equitable principle that all reasonable expenses
         incurred in the creation of a fund for the benefit of a class are reimbursable
23       proportionately by those who accept benefits from the fund authorizes
         reimbursement of full reasonable litigation expenses as costs of the suit.

18

Conte, *supra*, § 2.19 (citing *Trustees v. Greenough*, 105 U.S. 527 (1881)).  The expenses that may be reimbursed from the common fund are not limited to those taxed in a judgment against an opponent, but instead, encompass "all reasonable expenses."  *Id.  See also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (A plaintiff "may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client.").

To date, Class Counsel have incurred approximately $88,962.13 in litigation costs and expenses, and will incur additional costs through the conclusion of this matter (specifically, the costs of mailing the Settlement Notice are not reflected in the current costs).  Renaker Dec., ¶ 11 & Exh. B.  These costs include deposition-related expenses, photocopying and mailing expenses, expert and mediator fees, and other reasonable litigation-related costs.  All costs incurred here were necessary to the prosecution of this litigation and would normally have been billed to a client paying for counsel's services on a regular basis.  These costs are quite reasonable for a case of this duration and complexity and should be compensated in full.  Regardless, as described in the Settlement Notice, Plaintiffs hereby request that the Court now approve reimbursement of costs totaling $88,962.13.

## V.     THE INCENTIVE PAYMENTS REQUESTED ON BEHALF OF THE NAMED PLAINTIFFS ARE REASONABLE AND OF THE TYPE ROUTINELY AWARDED.

The Ninth Circuit has recognized that "[i]ncentive awards are fairly typical in class action cases."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (emphasis omitted).  "Such awards are discretionary, . . . and are intended to compensate class representatives for work done on behalf of the class, [and] to make up for financial or reputational risk undertaken in bringing the action."  *Id.*  A court in this district recently noted, "Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of

STIPULATION AND [PROPOSED] ORDER CONT. STATUS CONF. AND PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [CASE NO. C03-5725 SC]

$20,000 or more where, as here, the class representative has demonstrated a strong commitment to the class." *Garner v. State Farm Mutual Auto. Ins. Co.*, 2010 WL 1687832, at *17 n.8 (Apr. 22, 2010) (collecting cases); *see also Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995).

The payment of $15,000 each to the two Named Plaintiffs is intended to recognize the time and effort they expended on behalf of the Class. Mr. Vaughn and Ms. Travers have demonstrated their strong commitment to the Class by initiating this litigation, providing information regarding the Plans to Class Counsel, responding to discovery requests, producing relevant documents, preparing for and giving their depositions, traveling to San Francisco to attend two mediations (in Mr. Vaughn's case) or participating in the mediations by telephone (in Ms. Travers's case), monitoring the progress of the litigation, and consulting with Class Counsel regarding litigation decisions. Renaker Dec., ¶ 16.

The dedication that Mr. Vaughn and Ms. Travers have shown to this case and to the remaining members of the Class meets the standard established in the Ninth Circuit for the award of incentive payments. The requested awards of $15,000 to each of the Named Plaintiffs in this case have been disclosed to the Class in the Class Notice, so that the Court may consider any objections that the Class Members raise to the incentive awards prior to granting final approval of the Settlement.

Accordingly, the requested payment to the Class Representatives is appropriate and justified as part of the overall Settlement, in light of their services to and risks taken on behalf of the Class.

1

## VI.  CONCLUSION

2

3        For all of the foregoing reasons, Plaintiffs respectfully request that the Court approve

4 the payment of $570,000 as reasonable attorneys' fees and the payment of $88,962.13 as

5 reasonable costs, and approve the incentive awards of $15,000 to Named Plaintiffs Jerry

6 Vaughn and Theresa Travers.

7

8 Dated:  November 22, 2010                          LEWIS, FEINBERG, LEE,
                                                     RENAKER & JACKSON, P.C.

9                                                    __/s/ Teresa S. Renaker_____
                                                     Teresa S. Renaker
10                                                   Attorneys for the Class

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28